UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO



|  |  |  |
|---|---|---|
| IN RE APPLICATION OF THE | ) | |
| UNITED STATES OF AMERICA FOR | ) | MISC. NO. _____ |
| AN ORDER PURSUANT TO | ) | |
| 18 U.S.C. § 2703(d) | ) | **Filed Under Seal** |
|  | ) | |

APPLICATION OF THE UNITED STATES
FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully

submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The

proposed Order would require **Sprint Corporation**, a cellular service provider, located in

Overland Park, Kansas, to disclose certain records and other information pertaining to the cellular

telephone assigned call number **937-727-2163**, as described in Part I of Attachment A to the

proposed Order. The records and other information to be disclosed are described in Part II of

Attachment A. In support of this application, the United States asserts:

LEGAL BACKGROUND

1.     **Sprint Corporation** is a provider of an electronic communications service, as

defined in 18 U.S.C. § 2510(15). Accordingly, the United States may use a court order issued

under § 2703(d) to require **Sprint Corporation** to disclose the items described in Part II of

Attachment A, as these records pertain to a subscriber of electronic communications service and

are not the contents of communications. *See* 18 U.S.C. § 2703(c)(1).

2.     This Court has jurisdiction to issue the proposed Order because it is "a court of

competent jurisdiction," as defined in 18 U.S.C. § 2711(3). *See* 18 U.S.C. § 2703(d). Specifically,

1

the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

3.     A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

RELEVANT FACTS

4.     The United States is investigating the disappearance of a 14-year old minor male child who will be referred to for purposes of this Application as "Minor Male B". The investigation concerns possible violations of 18 U.S.C. § 1201 (kidnapping) and 18 U.S.C. § 371 (conspiracy) committed by TAWNNEY CALDWELL (also known as TAWNNEY THOMAS), CHELSIE YOUNG, TIMOTHY WEBB, LISA THOMAS, STACI THOMAS, DENNY HOCKER, and others known and unknown. The investigation is closely related to the events surrounding the homicide of ROBERT CALDWELL on August 15, 2017. On February 28, 2018, STERLING ROBERTS, TAWNNEY CALDWELL, CHANDRA HARMON, JAMES HARMON, CHANCE DEAKIN (also known as CHANCE ROBERTS), and CHRISTOPHER ROBERTS were arrested pursuant to warrants issued by the United States District Court for the Southern District of Ohio for various weapons, stalking, witness intimidation, and tampering with evidence offenses related to the events surrounding the homicide. The grand jury returned an indictment charging these individuals with the various offenses on or around March 13, 2018.

2

5.     By way of background, below is a summary of the relationships of the aforementioned individuals:

   a. ROBERT CALDWELL and TAWNNEY CALDWELL were married in approximately 2009. They had three children together, who will be referred to for purposes of this Application as "Minor Male A", age 15; "Minor Male B", age 14; and "Minor Male C", age 9. ROBERT CALDWELL and TAWNNEY CALDWELL were divorced in 2012. At that time, TAWNNEY CALDWELL was designated as the custodial and residential parent of the three sons, and ROBERT CALDWELL was awarded visitation rights. Prior to her arrest on February 28, 2018, TAWNNEY CALDWELL currently resided at 2006 Washington Creek Lane in Centerville, Ohio.

   b. From approximately 2013 to the present, TAWNNEY CALDWELL had a romantic relationship with STERLING ROBERTS. They had two biological daughters together (one of whom was born in December 2017) and sometimes lived together at TAWNNEY CALDWELL's residence in Centerville, Ohio.

   c. CHANCE DEAKIN and CHRISTOPHER ROBERTS are STERLING ROBERTS' brothers. Prior to their arrest on February 28, 2018, they resided at 36 Virginia Avenue in Dayton, Ohio.

   d. CHANDRA HARMON is TAWNNEY CALDWELL's mother. CHANDRA HARMON is married to JAMES HARMON. Prior to their arrest on February 28, 2018, they resided together at 6278 Rogers Lane in Burlington, Kentucky.

   e. CHELSIE YOUNG is TAWNNEY CALDWELL's aunt. TIMOTHY WEBB is CHELSIE YOUNG's boyfriend, and they currently reside together in Dayton, Ohio.

   f. LISA THOMAS is TAWNNEY CALDWELL's aunt. STACI THOMAS is LISA THOMAS's daughter, and they currently reside together in Centerville, Ohio.

   g. DENNY HOCKER is TAWNNEY CALDWELL's brother. He currently resides in Florence, Kentucky.

6.     Beginning in or around 2013, there has been an ongoing dispute between ROBERT CALDWELL and TAWNNEY CALDWELL regarding the custody of their three children. The dispute was litigated in the Montgomery County, Ohio Common Pleas Court, Division of Domestic Relations.

   a. ROBERT CALDWELL has filed motions over the years alleging that TAWNNEY CALDWELL has consistently interfered with his parental visitations of their

3

children. The Magistrate Judge found TAWNNEY CALDWELL in contempt of court on two occasions for interfering with ROBERT CALDWELL's parental rights.

b. TAWNNEY CALDWELL has also filed motions where she alleged that the children were not adjusting well to ROBERT CALDWELL as a parent, were doing poorly in school, and were unhappy. TAWNNEY CALDWELL also alleged that ROBERT CALDWELL was abusing the children. These issues were examined during a hearing on or around May 10, 2017, and were determined to be unfounded by the Magistrate Judge.

7.     After STERLING ROBERTS was arrested for firearms offenses in April 2017 (for which he was later convicted of Having Weapons While Under Disability in the Common Pleas Court Case Number 2017CR00274 in Montgomery County, Ohio), ROBERT CALDWELL brought STERLING ROBERTS' criminal history and drug usage to the attention of the Magistrate Judge. On or around May 2, 2017, the Magistrate Judge ordered that TAWNNEY CALDWELL not allow STERLING ROBERTS to be "in the presence or vicinity of the minor children nor shall he be allowed to have any contact with the minor children".

8.     Despite the order from the Magistrate Judge, TAWNNEY CALDWELL, her three children, and STERLING ROBERTS traveled to Florida together around early May 2017. ROBERT CALDWELL found out about the trip after seeing pictures posted on TAWNNEY CALDWELL's Facebook social media account, and he filed a motion requesting full custody of his children on or around May 10, 2017. A hearing was held before the Magistrate Judge where evidence was presented on this issue as well as TAWNNEY CALDWELL's persistent interference with ROBERT CALDWELL's visitation rights. During the hearing, TAWNNEY CALDWELL lied while under oath about the trip she took with STERLING ROBERTS. She admitted during testimony at a later hearing that she had in fact lied about her contact with STERLING ROBERTS.

9.     During the summer of 2017, ROBERT CALDWELL was supposed to receive a 30-day block of parenting time with his children based on the recommendation of a court-appointed

4

Guardian Ad Litem.  A few days after the children were transferred to ROBERT CALDWELL's custody for this 30-day period, all three children ran away from the home and went to TAWNNEY CALDWELL's residence.  It was determined that the children utilized an Uber[1] application that had been downloaded onto their cellular telephone(s) and paid for with TAWNNEY CALDWELL's debit card to travel to TAWNNEY CALDWELL's residence.

10.    In an order filed on or around July 29, 2017, the Magistrate Judge designated ROBERT CALDWELL as the custodial and residential parent for the three children.  The Magistrate Judge noted in the order that TAWNNEY CALDWELL lacked credibility and failed to demonstrate a "willingness or ability to actually facilitate parenting time" with ROBERT CALDWELL and "is at worst absent and at best simply not up to the job at hand".  Furthermore, the Magistrate Judge reiterated the previous order that STERLING ROBERTS should not have contact with the children.

11.    The investigation identified that just before the homicide of ROBERT CALDWELL in August 2017, additional activity transpired in the custody dispute regarding TAWNNEY CALDWELL's and ROBERT CALDWELL's sons.  Below is a summary of this activity:

    a.   On or around August 4, 2017, Minor Male B ran away from ROBERT CALDWELL's home and was subsequently located by law enforcement officers at CHANDRA HARMON's and JAMES HARMON's residence in Burlington, Kentucky.  A social worker from the Department of Job and Family Services, Children's Services Division, thereafter transported Minor Male B to TAWNNEY CALDWELL's home. STERLING ROBERTS was at TAWNNEY CALDWELL's residence at that time and identified himself as Minor Male B's uncle.  The Children's Services worker telephonically contacted TAWNNEY CALDWELL (who was not home), and she falsely identified STERLING ROBERTS as her brother.  Because the Children's Services worker was not aware of STERLING ROBERTS' true identity, she left Minor Male B at the house with STERLING

_____
1Uber is a car transportation and food delivery application available on mobile devices.  It is operated by Uber Technologies Inc., which is headquartered in San Francisco, California.  The application requires use of a mobile device to book the transportation services and offers "upfront pricing".

ROBERTS. TAWNNEY CALDWELL thereafter would not return Minor Male B to ROBERT CALDWELL's custody.

b. On or around August 8, 2017, ROBERT CALDWELL filed a motion requesting that TAWNNEY CALDWELL's parenting time be terminated. In response to the motion, the Magistrate Judge terminated TAWNNEY CALDWELL's visitation rights with the children.

c. On or around August 11, 2017, TAWNNEY CALDWELL filed an Ex-Parte Motion for Reallocation of Parental Rights and Responsibilities. In this motion, she alleged that ROBERT CALDWELL had sexually abused the three sons.

12. As part of the custody dispute involving ROBERT CALDWELL's and TAWNNEY CALDWELL's children, the Magistrate Judge ordered that ROBERT CALDWELL and his three children attend counseling services one time per week at an office in the Cornerstone Building located at 4134 Linden Avenue in Riverside, Ohio. Confirmations of the dates and times for these appointments were provided via text messages to both ROBERT CALDWELL and TAWNNEY CALDWELL. As such, TAWNNEY CALDWELL was aware of the dates and times of the appointments.

13. ROBERT CALDWELL and the three sons had a counseling appointment at the Cornerstone Building on August 15, 2017. Surveillance footage that captured the Cornerstone Building identified that ROBERT CALDWELL and two of the sons arrived for the appointment at approximately 4:02 p.m., and the third son (Minor Male B) arrived approximately ten to fifteen minutes later.

14. Surveillance footage that captured the Cornerstone Building revealed that a white male walked up to the building at approximately 4:02 p.m. on August 15, 2017. Officers and other witnesses (including family members and friends of STERLING ROBERTS) who have reviewed this footage have concluded that the individual in the footage is STERLING ROBERTS. The surveillance footage captured STERLING ROBERTS walk up to the front of the building on two

6

occasions and walk around ROBERT CALDWELL's vehicle. At approximately 5:25 p.m., the surveillance footage captured STERLING ROBERTS crouching down next to a mailbox near the front entrance, where he remained until approximately 5:57 p.m.

15.     Three women who arrived at the Cornerstone Building shortly before 5:57 p.m. were later interviewed by officers. All three women reported seeing a male squatting down by the mailbox, and two of the women reported seeing the man talk on a cellular telephone. One of the women reported that she heard the man say something to the effect of "I've already been waiting 15 minutes" while using his cellular telephone.

16.     The surveillance footage captured ROBERT CALDWELL and his three sons exiting the Cornerstone Building at approximately 5:57 p.m. Immediately thereafter, the surveillance footage captured the man believed to be STERLING ROBERTS quickly get up from his squatting position and run toward ROBERT CALDWELL with his arm outstretched, appearing to fire shots from a handgun. ROBERT CALDWELL fell to the ground, and his sons fled the scene. STERLING ROBERTS stood between ROBERT CALDWELL's legs and appeared to continue shooting ROBERT CALDWELL in the head. STERLING ROBERTS then fled the scene.

17.     Officers and paramedics were dispatched to the Cornerstone Building at approximately 6:00 p.m. Officers observed multiple gunshot wounds on ROBERT CALDWELL's head, upper torso, and arms. He was pronounced deceased at approximately 6:11 p.m. Among other items, officers collected approximately fourteen shell casings that were a mixture of brass and silver color.

18.     Following the homicide of ROBERT CALDWELL, his parents were awarded custody of the three children. TAWNNEY CALDWELL was forbidden from having any

unsupervised contact with her three children, including by telephone.

19.    During the late evening hours of August 21, 2017, following the funeral of ROBERT CALDWELL, Minor Male B left his grandparents' residence without their permission or knowledge. His whereabouts have been unknown since that time. During an investigation conducted by the Sugarcreek Township Police Department, officers have attempted to interview and obtain information from TAWNNEY CALDWELL and other family members. Officers have noted that TAWNNEY CALDWELL and some of the family members (including LISA THOMAS, STACI THOMAS, and CHELSEY YOUNG) have not been cooperative and refused to answer questions. Several individuals have told officers that Minor Male B has been staying with family members of TAWNNEY CALDWELL, and that the family members were attempting to conceal his whereabouts. Several individuals have also told officers that TAWNNEY CALDWELL and her family members do not seem to be concerned about Minor Male B's disappearance.

20.    Also during the course of the investigation of Minor Male B's disappearance, the following information was learned by the Sugarcreek Township Police Department:

> a. On or around August 29, 2017, Minor Male A's grandparents found Minor Male A in possession of a cellular telephone. Minor Male A told officers that TAWNNEY CALDWELL had given this telephone to a friend, who then arranged for it to be given to Minor Male A. As noted above, the court had forbidden TAWNNEY CALDWELL from having any unsupervised contact with the children. Review of the device determined that it was a pre-paid Simple Mobile TracFone. The Uber application was on the phone, and TAWNNEY CALDWELL's credit card was connected to the application. In addition, TAWNNEY CALDWELL's cellular telephone number was saved in the phone under the letter "Q". The friend involved in providing the phone to Minor Male A was also contacted, and this friend confirmed that TAWNNEY CALDWELL had in fact given him the phone and asked him to provide to Minor Male A.

> b. Officers learned that on or around December 16, 2017, TAWNNEY CALDWELL and LISA THOMAS met with Minor Male A at a Panera restaurant in Sugarcreek Township, Ohio, again contrary to the court order. Surveillance footage from the

8

restaurant was obtained by officers, and this footage captured the meeting. Minor Male A told officers that he had communicated with TAWNNEY CALDWELL via Instagram. Minor Male A identified that TAWNNEY CALDWELL's Instagram account was mich5253. Although Minor Male A was vague about how he communicated with TAWNNEY CALDWELL on Instagram, one of his friends who was with him on December 16, 2017 told officers that TAWNNEY CALDWELL sent Minor Male A photographs of where she was to signify where she wanted him to meet her. Minor Male A told investigators that when he met with TAWNNEY CALDWELL on December 16, 2017, she indicated that Minor Male B was likely in California.

21.     Minor Male A has been interviewed on several occasions pursuant to the investigation. In addition to the information noted above, Minor Male A provided the following information:

a.  Minor Male A denied that TAWNNEY CALDWELL ever talked to him about plans to murder ROBERT CALDWELL.

b.  A few weeks after ROBERT CALDWELL obtained custody of Minor Male A and his brothers, TAWNNEY CALDWELL talked to them about taking a cruise to Mexico and never returning.

c.  TAWNNEY CALDWELL had instructed him and his brothers to behave poorly when they were in the custody of their grandparents so that the grandparents would give up custody of them. TAWNNEY CALDWELL also instructed Minor Male A not to take his prescribed medication. TAWNNEY CALDWELL referred to this as "plan B". TAWNNEY CALDWELL had sent a text message to Minor Male A stating "bbbbb" (or something to that effect) to remind him to behave poorly.

22.     On or around March 1, 2018, the maternal grandmother of TAWNNEY CALDWELL was interviewed by law enforcement officers. This woman, who will be referred to as "Adult Female A", told officers that Minor Male B had spent the night at her residence on the evening of August 21, 2017 (the night that he left the maternal grandparents' home). Adult Female A advised that Minor Male B left her residence the following morning, and that she did not know where he went. Adult Female A denied having any knowledge of Minor Male B's current whereabouts. However, Adult Female A advised that both TAWNNEY CALDWELL and CHANDRA HARMON both later told her that Minor Male B was okay.

23.    On or around March 6, 2018, an adult male who will be referred to as "Adult Male A" was interviewed by law enforcement officers.  Adult Male A reported that he recently talked to TIMOTHY WEBB about Minor Male B.  According to Adult Male A, TIMOTHY WEBB said that Minor Male B had stayed at CHELSIE YOUNG's house for a period of time after his disappearance.  Also according to Adult Male A, Minor Male B then stayed at TAWNNEY CALDWELL's residence in Centerville, Ohio.  TIMOTHY WEBB said that the windows to TAWNNEY CALDWELL's residence had black plastic over them to conceal Minor Male B's whereabouts, and that Minor Male B sometimes hid in the attic.

24.    Based on the information provided by Adult Male A, law enforcement officers executed a search warrant at TAWNNEY CALDWELL's residence on or around March 6, 2018, to search for Minor Male B's whereabouts.  Minor Male B was not located during this search. However, officers observed that a number of the windows were covered by black plastic material and/or blankets (consistent with the information provided by Adult Male A).

25.    After the search warrant was executed at TAWNNEY CALDWELL's residence, both CHELSIE YOUNG and TIMOTHY WEBB were interviewed regarding the information provided by Adult Male A.  They both denied having any knowledge of Minor Male B's current or previous whereabouts.

26.    On or around March 21, 2018, an adult female who will be referred to as "Adult Female B" was interviewed.  Adult Female B identified that she recently talked to TIMOTHY WEBB about Minor Male B.  According to Adult Female B, TIMOTHY WEBB stated that Minor Male B had been moved from one location to another within the past few weeks.  TIMOTHY WEBB stated that he helped to "black out" the windows for this new location. TIMOTHY WEBB described the new location as being a "mansion" where one of Minor Male B's family members

10

resided. TIMOTHY WEBB said that this house had an attic and hidden compartment or room in the basement.

   a. The investigation has determined that LISA THOMAS (TAWNNEY CALDWELL's aunt) and STACI THOMAS (TAWNNEY CALDWELL's cousin) currently reside in a large home in Centerville, Ohio. There is a "panic room" in the basement of the residence. No other known family members reside in homes that could logically be described as a "mansion".

   b. A number of relatives of Minor Male B have told law enforcement officers that Minor Male B and LISA THOMAS had a particularly close relationship.

27. On or around March 23, 2018, Adult Female B re-contacted law enforcement officers. Adult Female B reported that she heard TIMOTHY WEBB talk to another individual about Minor Male B earlier that day. During this conversation, TIMOTHY WEBB said that Minor Male B was now in Kentucky.

28. On or around April 11, 2018, an adult male who will be referred as "Adult Male B" was interviewed by law enforcement officers. Adult Male B reported that he was contacted by DENNY HOCKER on or around March 9, 2018. DENNY HOCKER asked for Adult Male B's xBox gaming system. DENNY HOCKER said that he was moving Minor Male B to a new location, and that Minor Male B needed an xBox. DENNY HOCKER said that in order to prevent the xBox from being traced to Adult Male B, DENNY HOCKER intended to trade Adult Male B's xBox for the xBox of another individual before giving it to Minor Male B. DENNY HOCKER said that he was taking Minor Male B to a remote location in the woods where no one would find Minor Male B.

29. Previously, on or around April 4, 2018, DENNY HOCKER was interviewed by law enforcement officers. DENNY HOCKER denied having any knowledge of Minor Male B's current or previous whereabouts. DENNY HOCKER provided his consent for officers to search his residence, and Minor Male B was not located.

30.     Law enforcement officers have monitored the recorded telephone calls that TAWNNEY CALDWELL has made from the Montgomery County Jail since the time she was arrested on February 28, 2018. Officers noted that on or around April 6, 2018, CHELSIE YOUNG told TAWNNEY CALDWELL that officers had searched DENNY HOCKER's residence for Minor Male B's presence. When CHELSIE YOUNG said this, TAWNNEY CALDWELL there was a period of silence where neither TAWNNEY CALDWELL nor CHELSIE YOUNG said anything.

31.     During the course of the investigation, the following telephone numbers were identified by law enforcement officers:

a.   937-823-5044, used by TAWNNEY CALDWELL (with service provided by T-Mobile):

  i.   An individual who has known and been friends with TAWNNEY CALDWELL for approximately five to seven years identified that telephone number 937-823-5044 was used by her.

  ii.   In October 2017, while incarcerated at the Spartanburg County (South Carolina) Detention Center, STERLING ROBERTS contacted TAWNNEY CALDWELL by calling telephone number 937-823-5044.

  iii.   In March 2018, while incarcerated at the Montgomery County (Ohio) Jail, TAWNNEY CALDWELL communicated with a male identified as DAN HOCKER by calling telephone number 937-823-5044. During a later telephone call in March 2018 with CHELSIE YOUNG, TAWNNEY CALDWELL asked that CHELSIE YOUNG take her (TAWNNEY CALDWELL's) cellular telephone so that CHELSIE YOUNG could communicate with STERLING ROBERTS. During another telephone call with LISA THOMAS in April 2018, TAWNNEY CALDWELL asked LISA THOMAS to send text messages to other individuals from her (TAWNNEY CALDWELL's) cellular telephone. As such, it appears that CHELSIE YOUNG, LISA THOMAS, and others have utilized telephone number 937-823-5044 after TAWNNEY CALDWELL's arrest.

b.   859-496-4444, used by DENNY HOCKER (with service provided by T-Mobile)

  i.   As detailed above, DENNY HOCKER was interviewed by law enforcement officers on or around April 4, 2018. During this interview, he identified that he utilized telephone number 937-496-4444.

12

       ii.    When Adult Male B was interviewed by law enforcement officers on or around April 11, 2018, he identified that telephone number 937-496-4444 was utilized by DENNY HOCKER.

c.  937-272-2163, used by TIMOTHY WEBB (with service provided by T-Mobile)

       i.    TIMOTHY WEBB was interviewed by law enforcement officers on or around March 7, 2018. TIMOTHY WEBB told officers that he utilized telephone numbers 937-272-2163 and 937-727-2163.

d.  **937-727-2163**, used by CHELSIE YOUNG (with service provided by **Sprint Corporation**)

       i.    TIMOTHY WEBB was interviewed by law enforcement officers on or around March 7, 2018. TIMOTHY WEBB told officers that he utilized telephone numbers 937-272-2163 and **937-727-2163**.

       ii.    TAWNNEY CALDWELL used telephone number **937-727-2163** to communicate with both CHELSIE YOUNG and TIMOTHY WEBB in March 2018 and April 2018 while incarcerated at the Montgomery County Jail.

       iii.    In March 2018, while incarcerated at the Montgomery County (Ohio) Jail, CHELSIE YOUNG contacted TIMOTHY WEBB by calling telephone number **937-727-2163**.

e.  937-272-3488, used by STACI THOMAS (with service provided by AT&T)

       i.    On or around October 3, 2017, TAWNNEY CALDWELL's iPhone was seized from her residence by officers of the Riverside Police Department pursuant to a search warrant. The search of this cellular telephone identified that telephone number 937-272-3488 was saved in TAWNNEY CALDWELL's cellular telephone under the name "Staci".

       ii.    In February 2018, law enforcement officers obtained subscriber information for telephone number 937-272-3488 from AT&T pursuant to a grand jury subpoena. These records identified that the telephone number was subscribed to STACI THOMAS.

f.  305-781-5452, used by LISA THOMAS (with service provided by AT&T)

       i.    On or around October 3, 2017, TAWNNEY CALDWELL's iPhone was seized from her residence by officers of the Riverside Police Department pursuant to a search warrant. The search of this cellular telephone identified

that telephone number 305-781-5452 was saved in TAWNNEY CALDWELL's cellular telephone under the name "Lisa".

ii.   In March and April 2018, while incarcerated at the Montgomery County (Ohio) Jail, TAWNNEY CALDWELL contacted LISA THOMAS and STACI THOMAS by calling telephone number 305-781-5452.

32.   As part of the investigation, incoming and outgoing call detail records have been obtained pursuant to grand jury subpoenas and court orders for telephone numbers 937-503-4670 (a telephone number confirmed through the investigation to have been previously utilized by TAWNNEY CALDWELL), 859-653-4212 (a telephone number confirmed through the investigation to have been previously utilized by CHANDRA HARMON), 305-781-5452 (LISA THOMAS' telephone number), and 937-272-3488 (STACI THOMAS' telephone number). These records identified that during the overnight hours following Minor Male B's disappearance on August 21, 2017 (from approximately 9:00 p.m. to 9:00 a.m. the following morning), TAWNNEY CALDWELL, CHANDRA HARMON, STACI THOMAS, and LISA THOMAS exchanged a number of telephone calls with each other. These telephone calls included the following:

d.   LISA THOMAS exchanged approximately six telephone calls with CHANDRA HARMON, approximately two telephone calls with TAWNNEY THOMAS, and approximately five telephone calls with STACI THOMAS.

e.   CHANDRA HARMON exchanged approximately six telephone calls with LISA THOMAS, approximately one telephone call with TAWNNEY CALDWELL, and approximately four telephone calls with STACI THOMAS.

f.   STACI THOMAS exchanged approximately five telephone calls with LISA THOMAS, approximately four telephone calls with CHANDRA HARMON, and approximately ten telephone calls with TAWNNEY CALDWELL.

g.   TAWNNEY CALDWELL exchanged approximately two telephone calls with LISA THOMAS, approximately one telephone call with CHANDRA HARMON, and approximately ten telephone calls with STACI THOMAS.

33.   As detailed above, TAWNNEY CALDWELL, CHELSIE YOUNG, TIMOTHY WEBB, LISA THOMAS, STACI THOMAS, DENNY HOCKER, and others known and unknown

14

are being investigated for possible kidnapping and conspiracy offenses. Cell tower and sector information, as well as NELOS and RTT[2] data, can be materially relevant in investigations involving these offenses. Data regarding the subjects' whereabouts, as obtained from cell site information, can corroborate statements made by subjects and witnesses and provide possible evidence of the locations of the criminal activities. This information may also provide evidence regarding the possible whereabouts of Minor Male B and the travels that the subjects conducted when moving Minor Male B to the various potential locations.

34. Transactional records (such as incoming and outgoing call details, text message details, and other records) can be materially relevant in investigations involving kidnapping offenses. Because co-conspirators often communicate with each other before, during, and after the criminal offenses via cellular telephones, the transactional records can provide evidence of these communications and lead to the identification of co-conspirators. Subscriber information and billing records maintained by telephone providers also provide material evidence of the above noted offenses. Such information is significant in that it helps in determining the identities of the users of the telephones.

## REQUEST FOR ORDER

35. The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the events described above,

---

[2]When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course. These records are referred to as cell site records, and it is maintained by most cellular telephone providers (to include T-Mobile, AT&T, and Verizon). NELOS data is additional data maintained by AT&T. This data is like a historical "ping" wherein the approximate location of the phone is measured by the network then recorded in the records as a latitude, longitude and range of uncertainty. Range to Tower or RTT data is additional data maintained by Verizon. This data captures the time it takes for a signal to travel from the tower to the handset and back again. Based on this time, the network will provide a distance between the tower and cell phone. All three types of data for cellular telephones identifies the approximate location of the devices.

15

to determine the nature and scope of their activities, to corroborate or refute statements made by them or other witnesses, and identify the locations of criminal activities. Accordingly, the United States requests that **Sprint Corporation** be directed to produce all items described in Part II of Attachment A to the proposed Order.

36.     The United States further requests that the Order require **Sprint Corporation** not to notify any person, including the subscribers or customers of the account(s) listed in Part I of Attachment A, of the existence of the Order for a period of one year. *See* 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.* In this case, such an order would be appropriate because the disclosure could seriously jeopardize the investigation, including by giving targets an opportunity to flee from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates.  The investigation also relates to the disappearance and possible kidnapping of a minor child, and alerting the targets may put the child in danger. *See* 18 U.S.C. § 2705(b).

\\

\\

\\

\\

\\

\\

\\

\\

\\

37.     The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court.  As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.   Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

BENJAMIN C. GLASSMAN
United States Attorney


s/Amy M. Smith
_____
AMY M. SMITH (0081712)
Assistant United States Attorney
Attorney for Plaintiff
200 West Second Street, Suite 600
Dayton, Ohio 45402
Office: (937) 225-2910
Fax: (937) 225-2564
E-mail: Amy.Smith2@usdoj.gov

**ATTACHMENT A**

I.      **The Account(s)**

The Order applies to records and information associated with the cellular telephone assigned call number **937-727-2163** (the "Account").

II.     **Records and Other Information to Be Disclosed**

**Sprint Corporation** is required to disclose the following records and other information, if available, to the United States for each Account listed in Part I of this Attachment, for the time period August 15, 2017 to the present:

A.      The following information about the customers or subscribers of the Accounts:

1.      Names (including subscriber names, user names, and screen names);
2.      Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
3.      Local and long distance telephone connection records;
4.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
5.      Length of service (including start date) and types of service utilized;
6.      Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"));
7.      Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
8.      Means and source of payment for such service (including any credit card or bank account number) and billing records.

B.      For all voice, SMS, and data activity:  All records and other information (not including the contents of communications) relating to wire and electronic communications sent from or received by the Accounts, including the date and time of the communications, the method of communications, and the source and destination of the communications (such as source and destination email addresses, IP addresses, and telephone numbers); including all incoming and outgoing call details and SMS details; including all log files and messaging logs; and including information regarding the cell towers and sectors through which the communications were sent or received.

1
